# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| FLORIDA GAS TRANSMISSION COMPANY, LLC, § § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. H-08-3472 | |
| § | | |
| BAY GAS STORAGE COMPANY, § | | |
| LTD. and ENERGYSOUTH § | | |
| MIDSTREAM, INC., § | | |
| Defendants. § | | |

## **MEMORANDUM AND ORDER**

Pending before the Court is a Motion to Remand [Doc. # 10] filed by Plaintiff Florida Gas Transmission Company, LLC ("FGT"). Defendants Bay Gas Storage Company, Ltd. and EnergySouth Midstream, Inc. (collectively "Bay Gas") have responded [Doc. # 15].[1] Bay Gas has also filed a Motion to Dismiss or Stay Pending FERC Proceedings Pursuant to Rules 12(b)(6) & 12(b)(1) [Doc. # 4].[2] Upon review of the parties' submissions, all pertinent matters of record, and applicable law, the Court concludes that FGT's Motion to Remand should be **granted**.

---

[1]   FGT has replied [Doc. # 16], Bay Gas has filed a sur-reply [Doc. # 17], and FGT has filed a response to Bay Gas's sur-reply [Doc. # 18].

[2]   FGT has responded [Doc. # 11], and Bay Gas has replied [Doc. # 12].

## I.     FACTUAL BACKGROUND

Bay Gas owns and operates an intrastate natural gas pipeline in Alabama. On December 10, 1997, FGT and Bay Gas entered an agreement (the "Agreement") under which Bay Gas would provide firm transportation services from FGT's mainline to Alabama Power Company. Under the terms of the Agreement, FGT agreed to apply to the Federal Energy Regulatory Commission ("FERC") to obtain authority for this purpose. In February 1998, FGT filed an application with FERC and on April 30, 1998, FERC approved FGT's acquisition of firm transportation services from Bay Gas. FERC has jurisdiction over intrastate pipelines to the extent they provide transportation services under § 311 of the National Gas Policy Act ("NGPA"). *See* 15 U.S.C. § 3371.

On March 9, 2007, Bay Gas filed petition PR07-9 with FERC to adjust the rates and charges for customers using Bay Gas's pipeline.[3] Bay Gas sought, *inter alia*, to adjust its charges to recover lost and unaccounted for gas ("LAUF") costs from its customers by withholding gas volumes otherwise deliverable.[4]

Pursuant to FERC regulations, upon filing the petition for approval, Bay Gas was permitted to collect the proposed rate, subject to refund if FERC ultimately

---

[3]     Exh. 1(E) to Defendant's Motion to Dismiss [Doc. # 4].

[4]     *Id.* at 12.

determines that the rates and charges are not fair and equitable. 18 C.F.R. § 284.123(b)(2)(i). On February 29, 2008, Bay Gas filed petition PR08-17 informing FERC of Bay Gas's LAUF recovery methodology and LAUF reimbursement percentage, that is, the volume of gas that Bay Gas will withhold to recover LAUF costs.[5]

On June 10, 2008, FGT filed a Motion for Leave to Intervene Out of Time in the PR08-17 proceeding.[6] FGT stated that it moved to intervene because it "[r]ecently it came to FGT's attention that Bay Gas was taking the position that the LAUF proposed would be applicable to the FGT firm intrastate transportation agreement," and "[b]ecause Bay Gas takes the position that the LAUF applies to the FGT contract, which is unlike its other transportation contracts, FGT has a substantial interest in these proceedings that cannot be adequately represented by any other party and may be affected by a Commission decision herein."[7] On June 26, 2008, FGT filed a formal Protest and Motion to Dismiss in the PR08-17 proceeding.[8] FGT argued that the proposed LAUF charge is inapplicable to the Agreement and, in the alternative, that

---

[5] Exh. 1(H) to Defendant's Motion to Dismiss [Doc. # 4].

[6] Exh. 1(I) to Defendant's Motion to Dismiss [Doc. # 4].

[7] *Id.* at 3.

[8] FGT's Protest and Motion to Dismiss, Exh. 1(J) to Defendant's Motion to Dismiss [Doc. # 4].

Bay Gas has failed to file information demonstrating that the proposed 900% increase in the LAUF charge was fair and reasonable.

On October 16, 2008, FGT filed suit in the 190th Judicial District Court of Harris County, Texas. Bay Gas then timely removed to federal court on November 24, 2008, alleging federal-question jurisdiction.

## II.   ANALYSIS

The party invoking the removal jurisdiction of federal courts bears the burden of establishing federal jurisdiction. *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). In the absence of diversity jurisdiction, federal-question jurisdiction is required for removal. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Congress allows for removal of a case from state court to federal court when a plaintiff's complaint alleges a claim "arising under" federal law. 28 U.S.C. § 1441; *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).

Generally, "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392. Under the well-pleaded complaint

rule, the plaintiff is the master of the claim and may avoid federal jurisdiction by exclusively relying on state law, even where a federal claim is also available. *Id.* Moreover, a case may not be removed to federal court on the basis of a federal defense, "even if both parties concede that the federal defense is the only question truly at issue." *Id.* at 393; *see Hoskins v. Bekins Van Lines*, 343 F.3d 769, 772 (5th Cir. 2003) (same).

A case with only state law claims may arise under federal law "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9 (1983); *see Empire HealthChoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (holding that a case arises under federal law if a well-pleaded complaint establishes that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law); *In re Carter*, 618 F.2d 1093, 1100 (5th Cir. 1980) ("For a case to 'arise under' . . . federal law, a right or immunity created by [the law] 'must be an element, and an essential one, of the plaintiff's cause of action. . . . [That] right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another.'"(quoting *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 112 (1936))). However, for a district court to exercise

federal-question removal jurisdiction on this basis, the plaintiff's claim must "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfr.*, 545 U.S. 308, 314 (2005).

In the case at bar, Bay Gas does not dispute that FGT's Original Petition, on its face, does not assert a question of federal law. Rather, Bay Gas argues that FGT's claims arise under federal law because FGT's claims necessarily turn on some construction of federal law and because of the complete preemption and artful pleading doctrines.

### A.   Necessarily Turns on Some Construction of Federal Law

Because Bay Gas operates an intrastate pipeline that is regulated by FERC, it is required to file the tariffs—that is, the rates—it is going to charge its customers so that FERC can make a determination that the rates are just and reasonable. *See* 15 U.S.C. § 3371; 8 C.F.R. § 824.123. Once Bay Gas files a tariff with FERC, the tariff rates are effective until Bay Gas files an updated tariff or FERC makes a finding that the tariff is not just and reasonable and orders Bay Gas to file a new tariff that is just and reasonable. *See Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 576–78 (1981). Importantly, once filed, tariffs take on the force of federal law. *See Carter v. Am. Tel. & Tel. Co.*,

365 F.2d 486, 496 (5th Cir. 1966) ("[A] tariff, required by law to be filed, is not a mere contract. It is the law.").

Bay Gas has filed a tariff with FERC and this filed rate, therefore, has the force of federal law. Bay Gas argues that the adjudication of FGT's contract claims will necessarily require the interpretation of federal law—*i.e.*, the filed rate—and, therefore, that FGT's claims "arise under" federal law. The Court agrees that because the filed tariff is the equivalent of a federal regulation or law, FGT's state-law claim must necessarily *reference* federal law, but Bay Gas has not shown that resolution of FGT's claim requires interpretation of that federal law. Under *Grable*, Bay Gas must demonstrate there is a federal issue that is actually disputed and substantial.

In order to determine whether FGT's Original Petition necessarily raises such an actually disputed and substantial federal issue, the Court must analyze what claims FGT asserts. FGT and Bay Gas substantially differ in their characterization of these claims. FGT insists that it is not challenging the LAUF rates or the reasonableness of the rates; rather, it is only challenging Bay Gas's contractual right to enforce any LAUF charge, regardless of the rate. Under this characterization, federal law (the filed rate) is not actually disputed and, therefore, the *Grable* test is not satisfied. Bay Gas,

in contrast, contends that FGT "has raised and is litigating the issue [before FERC] of whether its contract affects or prohibits the LAUF charges."[9]

Fundamentally, Bay Gas's position on the existence of federal jurisdiction is that the Agreement does not control the outcome of this dispute. Bay Gas asserts that the federally filed tariff and federal interpretation of the tariff take precedence over the terms of the parties' private contract. The filed tariff, the federal regulation in issue here, comes into the case therefore as Bay Gas's defense to FGT's state law breach of contract claim, *i.e.*, that a federal regulation permits Bay Gas's conduct irrespective of whether the Agreement provides for a LAUF charge.[10] Federal law is clear: A case may not be removed to federal court on the basis of a federal defense. *See Caterpillar*, 482 U.S. at 393; *Hoskins*, 343 F.3d at 772[11]; *see also Pan Am. Petroleum Corp. v. Superior Court of Del.*, 366 U.S. 656, 661 (1961). Bay Gas has not shown any element of FGT's claim that requires resolution of a substantial question of federal law. Only Bay Gas's defense potentially invokes federal legal questions. Accordingly, Bay Gas

---

[9] Bay Gas's Response [Doc. # 15], at v.

[10] *See United Gas Pipe Line Co. v. Mobile Gas Serv. Corp.*, 350 U.S. 332 (1956); *FPC v. Sierra Pacific Power Co.*, 350 U.S. 348 (1956).

[11] "A plaintiff with a choice between federal- and state-law claims may elect to proceed in state court on the exclusive basis of state law, thus defeating the defendant's opportunity to remove, but taking the risk that his federal claims will one day be precluded." *Hoskins*, 343 F.3d at 772–73 (quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995)).

has failed to demonstrate that FGT's claims "arise under" federal law for purposes of establishing the federal-question jurisdiction required for removal.

The Court turns to the arguments Bay Gas advances in its briefs. Bay Gas first asserts that FGT is presently litigating the reasonableness of the LAUF rate before FERC. In substance, this argument involves a request for the Court to apply the doctrine of primary jurisdiction[12] and to stay the proceedings pending FERC resolution of the issues. However, this argument puts the cart before the horse, brushing past the crucial threshold issue of whether Bay Gas has established federal-question jurisdiction for purposes of 18 U.S.C. § 1331. FERC has exclusive power to decide the reasonableness of rates,[13] a power that FGT does not dispute. FERC's exclusive authority, however, does not generate federal-question jurisdiction in this Court if the federal court plaintiff's underlying court claim does not challenge the reasonableness

---

[12] "Primary jurisdiction is a judicially created doctrine whereby a court of competent jurisdiction may dismiss or stay an action pending a resolution of some portion of the action by an administrative agency." *Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199, 201 (5th Cir. 1988). A court "must weigh the benefits of obtaining the agency's aid against the need to resolve the litigation expeditiously and may defer only if the benefits of agency review exceed the costs imposed on the parties." *Id.* The ultimate question is "whether a case raises issues of fact not within the conventional experience of judges, but within the purview of an agency's responsibilities." *Pharm. Research & Mfrs. of America v. Walsh*, 538 U.S. 644, 673 (2003). "The advisability of invoking primary jurisdiction is greatest when the issue is already before the agency." *Mississippi Power & Light Co. v. United Gas Pipeline Co.*, 532 F.2d 412, 420 (5th Cir. 1976).

[13] Under the filed rate doctrine "the reasonableness of rates and agreements regulated by FERC may not be collaterally attacked in state or federal courts. The only appropriate forum for such a challenges is before [FERC] or a court reviewing [FERC's] order." *In re Mirant Corp.*, 378 F.3d 511, 518 (5th Cir. 2004).

of the rate. Without jurisdiction, the Court cannot reach the issue of whether it should exercise the doctrine of primary jurisdiction.[14]

The gravamen of FGT's Original Petition is that FGT objects to paying a LAUF charge for pipeline services, as Bay Gas presently imposes, because no such charge is permitted under the Agreement. FGT currently is disputing the "reasonableness" of the LAUF charges before FERC,[15] which FGT acknowledges is the only proper forum for such a reasonableness challenge.[16] However, the pendency of FGT's rate reasonableness challenge does not necessarily bar FGT from bringing a separate claim against Bay Gas on a claim other than a challenge to a filed rate. *See Pan Am.*, 366 U.S. at 656. Thus, even if the reasonableness challenge pending before FERC may

---

[14]  As discussed *infra* in Section II.B, the NGPA does not completely preempt all state law claims. Therefore, the simple fact that FGT is also presently contesting the reasonableness of the LAUF rate *before FERC*, does not deprive it of the ability to bring suit in state court provided that it is not challenging the reasonableness of the rate.

Moreover, Texas state courts can and do apply the doctrine of primary jurisdiction, so Bay Gas will be able to raise its primary jurisdiction argument in state court. *See In re Southwestern Bell Tel. Co., L.P.*, 226 S.W.3d 400, 403 (Tex. 2007) ("Primary jurisdiction allocates power between courts and agencies when both have authority to make initial determinations in a dispute." (internal quotations and citations omitted)); *see also Shell Pipeline Corp. v. Coastal States Trading, Inc.*, 788 S.W.2d 837, 842 (Tex.App.—Houston [1st Dist.] 1990, writ denied) (holding that FERC did not have primary jurisdiction over contract and negligence claims), *disapproved on other grounds*, *Johnson & Higgins of Texas v. Kenneco Energy, Inc.*, 962 S.W.2d 507 (Tex.1998).

[15]  FGT's Protest and Motion to Dismiss, Exh. 1(J) to Defendant's Motion to Dismiss [Doc. # 4], at 4.

[16]  The Court addresses preemption separately below. *See* section II.B.

militate in favor of the Court exercising the doctrine of primary jurisdiction, that administrative proceeding does not *per se* generate federal-question jurisdiction.

In further support of its argument that its contract claims do not actually dispute the reasonableness of the filed rate, FGT argues that its damages can be calculated without reference to the reasonableness of the rate. FGT explains that because Bay Gas is currently assessing the LAUF charge against FGT—allegedly in violation of the Agreement—by withholding portions of transported gas, FGT's damages can be calculated simply by multiplying the volume of gas withheld by the market price for natural gas. Bay Gas does not disagree with respect to the calculation method, but opposes FGT's principal point that the charge is unauthorized. Bay Gas merely asserts conclusorily that the damages FGT purports to seek in the state law claim are exactly the same as the LAUF charges pending before FERC. This argument is insufficient.

The Ninth Circuit authority on which Bay Gas relies, *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831 (9th Cir. 2004), is not controlling on the Court. Moreover, *Dynegy* is factually distinguishable from the case at bar. In *Dynegy*, the federally filed tariffs completely defined the defendants' obligations to maintain specified levels of reserve generating capacity. There was no privately agreed contract between plaintiff and defendants. The gravamen of plaintiff's claims were that defendants breached their tariff obligations by failing to maintain the required level of reserve generating

capacity.[17] The plaintiff sued to enforce the tariffs and federal regulations. Therefore, courts' determinations of liability necessarily turned on an interpretation of what reserve generating capacity obligations were imposed on the defendants by the filed tariffs. Here, in contrast, the Agreement between FGT and Bay Gas exists apart from the filed tariffs and the Agreement fundamentally defines the parties' respective obligations.

After careful consideration of FGT's Original Petition and the parties' arguments, the Court concludes FGT in this suit does not challenge the reasonableness of a federal law or regulation (the new Bay Gas tariff for collection of the LAUF charge) and therefore there is no disputed and substantial federal issue presented here.[18] Bay Gas has not established that vindication of FGT's contract rights under state law (distinct from Bay Gas's defenses) necessarily turns on some construction of federal law. Accordingly, FGT's claims do not "arise under" federal law for purposes of establishing the federal-question jurisdiction required for removal.

---

[17] Reserve generating capacity is electrical generating capacity that can be converted to energy and delivered to the grid in response to uncertain events, such as major generating plant outages.

[18] Because Bay Gas has failed to satisfy the first prong of the *Grable* test, the Court does not reach the importance of having a federal forum decide the issue and the effect of exercising jurisdiction on the balance of federal-state division of responsibilities.

### B. Complete Preemption Doctrine

Bay Gas also argues that FGT's claims "arise under" federal law because the complete preemption doctrine applies. Under the complete preemption doctrine, if an area of state law has been completely preempted, "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393; *see also Beneficial*, 539 U.S. at 7 ("When [a] federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. This claim is then removable under 28 U.S.C. § 1441(b), which authorizes any claim that 'arises under' federal law to be removed to federal court."). However, complete preemption is narrow in scope and differs from ordinary preemption, which does not create federal-question jurisdiction in the removal context. Complete preemption applies only in the limited number of circumstances where Congress has clearly manifested an intent to disallow state claims in a particular field. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987); *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 553 (5th Cir. 2008) (holding that to find complete preemption, a court must "determine that Congress intended a federal act to provide the exclusive cause of action for the claims at issue.").

Bay Gas contends that FGT's claims are completely preempted under § 3416 of the NGPA because FERC proceeding PR08-17 vests FERC with exclusive federal jurisdiction over the subject matter of the LAUF charge dispute. 15 U.S.C. § 3416. Specifically, Bay Gas argues that NGPA § 3416 provides FGT a statutory right to file a petition for rehearing with FERC on any ruling regarding LAUF charges that FGT wishes to challenge and that a petition for rehearing is a statutory prerequisite for judicial review of a FERC ruling. *See id.* § 3416(a)(2). Bay Gas's argument does not demonstrate federal jurisdiction in the case at bar. This case does not implicate or rely on § 3416. Section 3416 only applies to judicial review of an administrative agency's order within the meaning of 5 U.S.C. § 551(6). Section 551(6) defines "order" as the "whole or part of a *final* disposition, whether affirmative, negative, injunctive or declaratory form, of an agency in a matter other than rule making." *Id.* (emphasis added). In the context of the Federal Power Act, which contains an analogous provision to NGPA § 3416, the Supreme Court has described the review permitted to include "only 'orders of a definitive character dealing with the merits of a proceeding before the Commission.'" *ASARCO, Inc. v. F.E.R.C.*, 777 F.2d 764, 771 (D.C. Cir. 1985) (quoting *FPC v. Metropolitan Edison Co.*, 304 U.S. 375, 384 (1938)). FERC has not made any such definitive, reviewable order in the PR08-17 petition. *See Papago Tribal Utility Auth. v. F.E.R.C.*, 628 F.2d 235, 240 (D.C. Cir. 1980)

("Acceptance of a filing, coupled with scheduling of a hearing, is the initiation of an administrative proceeding; judicial review properly follows the conclusion of the proceeding"). Because there has been no reviewable order, § 3416 does not preempt FGT's claims and does not create federal-question jurisdiction in the case at bar.

Moreover, even if § 3416 were applicable, there is no complete preemption. Bay Gas has not directed the Court to authority apart from § 3416 to support the position that Congress intended the NGPA to completely preempt state law claims, and the Court independently has found none. "If Congress intends a preemption instruction completely to displace ordinarily applicable state law, and to confer federal jurisdiction thereby, it may be expected to make that atypical intention clear." *Empire HealthChoice*, 547 U.S. at 698. No such atypical intention is evident here. The NGPA does not contain complete preemption language. To the contrary, NGPA § 3432 provides that "[n]othing in this chapter shall affect the authority of any state to establish or enforce any maximum lawful price for the first sale of natural gas produced in such State." 15 U.S.C. § 3432(a).

In summary, the NGPA does not completely preempt FGT's state law claims and does not otherwise create federal jurisdiction for FGT's claims in this case. As a result, FGT's claims do not arise under federal law for purposes of establishing federal-question jurisdiction.

### C.       Artful Pleading Doctrine

Bay Gas additionally argues that the artful pleading doctrine provides a basis for removal. Under the artful pleading doctrine, removal is not defeated even though plaintiff has artfully avoided any suggestion of a federal issue in the complaint. However, Fifth Circuit authority is clear: the artful pleading doctrine only applies where state law is subject to complete preemption. *Bernhard*, 523 F.3d at 551; *Waste Control Specialits, LLC v. Envirocare of Texas, Inc.*, 199 F.3d 781, 783 (5th Cir. 2000) (citing *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998)). Because the Court concludes that the NGPA does not completely preempt state law, Bay Gas's argument fails. The artful pleading doctrine does not provide a basis for removal of FGT's Original Petition.

## IV.     CONCLUSION

Bay Gas has failed to establish that the Court has federal-question jurisdiction over FGT's contract claims. Accordingly, it is hereby

**ORDERED** that FGT's Motion to Remand [Doc. # 10] is **GRANTED**. The case will be remanded to state court by separate order.

SIGNED at Houston, Texas, this **11th** day of **February, 2009**.

*(signature)*
Nancy F. Atlas
United States District Judge